**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Tammy Hepburn,<br><br>               Plaintiff,<br><br>v.<br><br>Teleperformance,<br><br>               Defendant. | No. CV-18-00151-TUC-BGM<br><br>**ORDER** |

Currently pending before the Court is Defendant Teleperformance's Motion for Summary Judgment (Doc. 46). Defendant has also filed a Statement of Facts in Support of Defendant's Motion for Summary Judgment ("SOF") (Doc. 47). Plaintiff filed her Opposition to Defendant's Motion for Summary Judgment (Doc. 51). Plaintiff also filed a Supplemental Brief (Doc. 53), per the Court's December 21, 2018 Order (Doc. 52). Defendant replied (Doc. 54) to both of Plaintiff's responses. Also pending before the Court is Plaintiff's Motion for Entry of Default Judgment (Doc. 45). Defendant has filed its Response (Doc. 48) and Plaintiff replied (Doc. 50). As such, both motions are fully briefed and ripe for adjudication.

In its discretion, the Court finds this case suitable for decision without oral argument. *See* LRCiv. 7.2(f). The Parties have adequately presented the facts and legal arguments in their briefs and supporting documents, and the decisional process would not be significantly aided by oral argument.

. . .

. . .

## I. FACTUAL BACKGROUND

Plaintiff brings this cause of action based on allegations of discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"). The Court views the facts, as it must, in the light most favorable to Plaintiff.

### A. *Plaintiff's Employment at Teleperformance—Overview*

Plaintiff Tammy Hepburn began her employment with Teleperformance, formerly known as Aegis USA, Inc. on September 9, 2013. Def.'s SOF (Doc. 47), Hepburn Depo. 5/22/2018 (Exh. "1") at 12:3–15. Plaintiff was hired as a Customer Service Representative and worked in this position until she applied for and was accepted to the position of HR Receptionist in May 2014. *Id.*, Exh. "1" at 11:1–10, 11:24–12:11, 20:14–19; *see also* Pl.'s First Amended Compl. (Doc. 1-3), AEGIS Welcome to Our Team (Temporary Employee) (Exh. "A"). On July 30, 2014, Teleperformance experienced a seasonal increase of temporary employee hiring in the Sierra Vista area. Def.'s SOF (Doc. 47), Teleperformance's Position Statement to the EEOC (Exh. "3-A") at Bates No. TPUSA000057. Due to the hiring increase, Plaintiff was assigned the job duties of controlling employee files, conducting backgrounds checks, assisting the recruiting team, and overseeing the reception area. *Id.*, Exh. "1" at 23:1–10, 24:3–8. To fill these duties, Plaintiff was assigned to a back office to assist Human Resources. *Id.*, Exh. "1" at 23:1–4, 25:6–26:7.

### B. *Alleged Work Interference*

On September 10, 2014, Plaintiff sent an e-mail to Judy Morris, Senior Vice President of HR and Niti Prothi, Associate Vice President of HR. Def.'s SOF (Doc. 47), Hepburn E-mail to Morris & Prothi 9/10/2014 (Exh. "3-B") at Bates No. TPUSA000062. Plaintiff indicated that she was doing well, but attached a letter stating that someone was going into her office and "sabotaging" her work by rearranging the employee files. *Id.*, Exh. "3-B" at Bates No. TPUSA000062. Ms. Prothi investigated Plaintiff's allegations, and all of Plaintiff's colleagues denied the allegations. *Id.*, Teleperformance's Position

Statement to the EEOC (Exh. "3-A") at Bates Nos. TPUSA000057–TPUSA000058. Because the files with which Plaintiff was working were employee files, personnel from both HR, as well as the recruiting department, required access to and worked with the same. *Id.*, Exh. "3-A" at Bates. Nos. TPUSA000057–TPUSA000058; *see also* Def.'s SOF (Doc. 47), Hepburn Depo. 5/22/2018 (Exh. "1") at 26:19–28:6.

On September 17, 2014, a conference call was held with Plaintiff, Ms. Prothi, and Joseph Lu, the Manager of the Legal Department. Def.'s SOF (Doc. 47), Exh. "3-A" at Bates Nos. TPUSA000058–59; *see also* Def.'s SOF (Doc. 47), Exh. "1" at 46:24–49:3. During that call, it was decided that Ms. Prothi would remind the HR Department of the company policies on professional conduct and limiting access to confidential personnel files to those who worked in HR. Def.'s SOF (Doc. 47), Exh. "3-A" at Bates Nos. TPUSA000058–59; *see also* Def.'s SOF (Doc. 47), Exh. "1" at 46:24–49:3. Hepburn has acknowledged that the condition of the files may have been due to excessive hiring. Def.'s SOF (Doc. 47), Exh. "1" at 50:2–9.

### C. *Alleged Discriminatory Treatment*

#### 1. McClanahan Statements

On September 16, 2014, Plaintiff raised an additional allegation in an e-mail to Ms. Morris stating that Margaret McClanahan, a receptionist at Teleperformance had referred to Plaintiff using the "N" word. Pl.'s First Amended Compl. (Doc. 1-3), E-mail from Hepburn to Morris 9/16/2014 (Exh. "C"). This additional allegation was also discussed during the conference call on September 17, 2014. Def.'s SOF (Doc. 47), Hepburn Depo. 5/22/2018 (Exh. "1") at 46:24–49:3. It was decided that Rhonda Reinartz, HR Assistant, would investigate the allegation. Def.'s SOF (Doc. 47), Teleperformance's Position Statement to the EEOC (Exh. "3-A") at Bates Nos. TPUSA000059 & Reinartz Aff. (Exh. "5") at ¶ 6 & Bay Aff. (Exh. "6") at ¶ 15. Neither Ms. Prothi nor Ms. Reinartz were able to corroborate Hepburn's claim. Def.'s SOF (Doc. 47), Exh. "3-A" at Bates No. TFUSA000059 & Exh. "5" at ¶ 10 & Exh. "6" at ¶ 18. Ms. McClanahan denied ever having used such language in reference to Plaintiff. Def.'s SOF

(Doc. 47), Exh. "6" at ¶ 11.

On October 6, 2014, Plaintiff again raised her claims of file "sabotage" and Ms. McClanahan's alleged use of the "N" word to the new HR Manager, Yolanda Bay. *Id.*, Exh. "6" at ¶ 4 & Exh. "1" at 73:4-20 & Exh. "3-A" at Bates No. TPUSA000059. Ms. Bay investigated the allegation and spoke with Ms. McClanahan who again denied ever having used such language. Def.'s SOF (Doc. 47), Exh. "6" at ¶ 11 & Exh. "3-A" at Bates No. TPUSA000059. Ms. Bay also spoke with Ms. Reinartz who confirmed that Ms. McClanahan had also denied ever using such language upon questioning by Ms. Reinartz. Def.'s SOF (Doc. 47), Exh. "6" at ¶ 16 & Exh. "5" at ¶ 8 & Exh. "3-A" at Bates No. TPUSA000059. No one was able to substantiate any of Plaintiff's claims. Def.'s SOF (Doc. 47), Exh. "6" at ¶ 19 & Exh. "5" at ¶ 10 & Exh. "3-A" at Bates No. TPUSA000059. Ms. McClanahan was coached on proper workplace behavior. Def.'s SOF (Doc. 47), Exh. "6" at ¶ 23.

### 2. Reinartz Actions

Plaintiff alleges that Ms. Reinartz, an HR Representative, also used the "N" word in her presence, as well as showing Plaintiff an electronic photograph of a black and white herder type dog, with a bloody knife, and in quotations it read "Mary had a little lamb." Def.'s SOF (Doc. 47), Second Amended Compl. (Doc. 15) at ¶¶ 10, 12 & Reinartz Aff. (Exh. "5") at ¶ 1. Ms. Reinartz denies that she ever showed Plaintiff such a photograph. Def.'s SOF (Doc. 47), Exh. "5" at ¶¶ 11–13. After the September 17, 2014 conference call between Plaintiff, Ms. Prothi, and Mr. Lu, Plaintiff "e-mailed Joe Lu back and requested that Rhonda Reinartz be the one designated for the investigation[,] . . . stat[ing] . . . [she] wanted Rhonda Reinartz to do the investigation because Karl Kondos spends a large amount of time conversing with Margret [sic] McClanahan and I wanted to make sure this is done professionally, honestly, and fairly." Def.'s SOF (Doc. 47), Hepburn Rebuttal to Teleperformance EEOC Position Statement (Exh. "8-B") (Doc. 47-9) at 19.[1]

---

[1] Page reference is to the CM/ECF page number for clarity.

### 3. E-mails

Plaintiff alleges that she ceased receiving company update e-mails while fulfilling her new duties in the HR Department, despite having received them while working in the receptionist position. Def.'s SOF (Doc. 47), Hepburn Depo. 5/22/2018 (Exh. "1") at 59:20–60:14. Plaintiff indicated that Ms. McClanahan, the new receptionist, began receiving those e-mails. *Id.*, Exh. "1" at 56:6–10. Plaintiff testified that the e-mail updates came from an employee named Jim Gordon. *Id.*, Exh. "1" at 59:17–22.

### 4. Vinegar Incident

Plaintiff alleges that someone placed a substance that looked like sperm in the vinegar at her home. Def.'s SOF (Doc. 47), Hepburn Depo. 5/22/2018 (Exh. "1") at 82:3–83:13. Plaintiff believed that if people were able to come into her office, where she kept her purse, they could get access to the keys to her home. *Id.* She took the vinegar sample to her neighbor, as well as Sierra Vista Hospital, who agreed that there was something in the vinegar. *Id.*

### D. *Plaintiff's Separation from Defendant Teleperformance*

On December 1, 2014, Plaintiff left her position with Defendant Teleperformance. Def.'s SOF (Doc. 47), Hepburn Depo. 5/22/2018 at 19:16–25. Prior to separating from Defendant Teleperformance, Plaintiff indicated that she would be interested in transferring to an office in Virginia to be closer to family. *Id.*, Exh. "5" at ¶ 14.

### E. *The Current Litigation*

During her deposition, Plaintiff admitted that she did not "suffer any racial problems, discrimination, [or] changes in [her] employment [or] [the] conditions of [her] employment because of [her] race." Def.'s SOF (Doc. 47), Hepburn Depo. 5/22/2018 (Exh. "1") at 49:23–50:1. Plaintiff further testified that none of the Teleperformance supervisors treated her poorly because of her race. *Id.*, Exh. "1" at 53:7–16. Plaintiff acknowledged that following the September 17, 2014 conference call with Mr. Lu and Ms. Prothi, no one used racially derogatory language or engaged in any racially based discrimination. *Id.*, Exh. "1" at 49:18–50:1.

## II. STANDARD OF REVIEW

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986), "there is no genuine issue as to any material fact and [] the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is "material" if it "might affect the outcome of the suit under the governing law," and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. Thus, factual disputes that have no bearing on the outcome of a suit are irrelevant to the consideration of a motion for summary judgment. *Id*. In order to withstand a motion for summary judgment, the nonmoving party must show "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Moreover, a "mere scintilla of evidence" does not preclude the entry of summary judgment. *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512. The United States Supreme Court also recognized that "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 1776, 167 L.Ed.2d 686 (2007).

## III. ANALYSIS

### A. *Motion for Default Judgment*

On October 25, 2018, Plaintiff filed a Motion for Entry of Default Judgment (Doc. 45). Plaintiff claims that Defendant failed to comply with her request for production, and therefore sought default judgment as a sanction for this failure. *Id.* at 1–2. During the course of this litigation, Defendant filed a Motion for Protective Order (Doc. 41), which the Court granted. *See* Order 10/3/2018 (Doc. 43). Prior to the filing of her motion (Doc.

45), Plaintiff had refused to sign the Non-Disclosure Certification of the Protective Order. Def.'s Response re: Mot. for Default (Doc. 48) at 1–2. As a result of Defendant's efforts to meet an confer after the filing of Plaintiff's motion (Doc. 45), Plaintiff executed the Non-Disclosure Certificate and returned it to Defendant on the same date its response (Doc. 48) was filed. *See* Def.'s Response re: Mot. for Default (Doc. 48); Pl.'s Response to Def.'s Response to Pl.'s Mot. for Entry of Default Judgment (Doc. 50). On November 26, 2018, the same date that Plaintiff filed her Reply (Doc. 50), Defendant served its responses to her. Def.'s Not. of Service (Doc. 49).

As an initial matter, default judgment is only available as a sanction for violations of a Court's discovery order.[2] *See* Fed. R. Civ. P. 37(b)(2)(A). Refusal to produce documents based on the opposing party's failure to certify non-disclosure is not a such a violation. Moreover, Defendant served its supplemental discovery upon receipt of Plaintiff's certification. Accordingly, Plaintiff's Motion for Entry of Default Judgment (Doc. 45) is DENIED.

### B. *Evidentiary Objections*

Defendant asserts that Plaintiff's responsive filings do not comply with either the Federal Rules of Civil Procedure or with this district's Local Rules. *See* Def.'s Reply (Doc. 54) 1–3. As such, Defendant urges the Court to grant it summary judgment. *See id.*

Federal Rule 56(c) mandates that "[a] party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only),

---

[2] Fed. R. Civ. P. 37(b)(2)(A) provides in relevant part:

> (A) *For Not obeying a Discovery Order.* If a party or a party's officer, director, or managing agent—or a witness designated under Rule 30(b)(6) or 31(a)(4)—fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders. They may include[:] . . . rendering a default judgment against the disobedient party.

admissions, interrogatory answers, or other materials [in the record.]" Fed. R. Civ. P. 56(c)(1). A fact that "cannot be presented in a form that would be admissible in evidence" is grounds for objection. Fed. R. Civ. P. 56(c)(2). Moreover, the Rules of Practice of the United States District Court for the District of Arizona ("Local Rules") require that"[e]ach additional fact . . . must refer to a specific admissible portion of the record where the fact finds support." LRCiv. 56.1(b). After Plaintiff filed her initial response, the Court notified her of the requirements of Rule 56, Federal Rules of Civil Procedure, and LRCiv. 56.1, and allowed her to supplement his response accordingly. *See* Order 12/21/2018 (Doc. 52). It is not the Court's task "to scour the record in search of a genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (quoting *Richards v. Combined Ins. Co.*, 55 F.3d 247 251 (7th Cir. 1995)).

Here, Plaintiff's controverting facts indicate a denial and ostensibly what she disagrees with; however, the page and lines she designates do not match Defendant's SOF, nor does she state what her position is or otherwise cite to anything in the record that would support her version. *See* Response (Doc. 51) at 6–8. Rather, Plaintiff has outlined dates and what occurred, as well as provided documents exchanged as part of the disclosure process. *See* Pl.'s Suppl. (Doc. 53). Although the Court will not summarily grant Defendant summary judgment for these shortcomings, bare factual allegations and conclusory statements have not been given any weight. *See, e.g.,* Pl.'s Response (Doc. 51) at 15–16 (alleging without citation or support that someone from Teleperformance broke into her home and put a substance in her vinegar).

### C. *Hostile Work Environment*

Title VII of the Civil Rights Act of 1964 provides that:

It shall be an unlawful employment practice for an employer –

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

(2) to limit, segregate, or classify his employees or applicants for

employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2(a). "A hostile work environment claim involves a workplace atmosphere so discriminatory and abusive that it unreasonably interferes with the job performance of those harassed." *Brooks v. City of San Mateo*, 229 F.3d 917, 923 (9th Cir. 2000).

In order to prevail on a hostile work environment claim, Plaintiff must show that her "workplace [was] permeated with 'discriminatory intimidation, ridicule, and insult . . . . that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993); *Vasquez v. County of Los Angeles*, 349 F.3d 634, 642 (9th Cir. 2003) ("To prevail on a hostile workplace claim premised on either race or sex, a plaintiff must show: (1) that he was subjected to verbal or physical conduct of a racial or sexual nature; (2) that the conduct was unwelcome; and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment to create an abusive work environment."). "To determine whether conduct was sufficiently severe or pervasive to violate Title VII, we look at 'all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Vasquez*, 349 F.3d at 642. Further, the conduct must create an objectively hostile or abusive work environment, and the victim must subjectively perceive the environment to be abusive in order to implicate Title VII. *Harris*, 510 U.S. at 21–22, 114 S.Ct. at 370. "Objective hostility is determined by examining the totality of the circumstances and whether a reasonable person with the same characteristics as the victim would perceive the workplace as hostile." *Craig v. M & O Agencies, Inc.*, 496 F.3d 1047, 1055 (9th Cir. 2007) (citations omitted). Subjective hostility requires a showing that the employee

"perceived [his] work environment to be hostile, and that a reasonable person in [his] position would perceive it to be so." *Dominguez-Curry v. Nevada Transp. Dept.*, 424 F.3d 1027, 1034 (9th Cir. 2005) (citations omitted).

Here, Plaintiff alleges one instance in September 2014 alleging that someone was going into her office and "sabotaging" her work by rearranging the employee files. Pl.'s Second Amended Compl. (Doc. 33) at 3 ¶¶ 5–7. Plaintiff also alleges two (2) instances in which co-workers used the "N" word in her presence. *Id.* at 4 ¶¶ 9–10. Plaintiff alleged that Ms. Reinartz twice showed her a picture of a black and white dog and a bloody knife, with the caption "Mary had a little lamb." *Id.* at 4–5 ¶ 12. Finally, Plaintiff alleges that she stopped receiving corporate e-mail updates from August 1, 2014 through November 30, 2014. *Id.* at 5 ¶ 14.

"Because only the employer can change the terms and conditions of employment, an isolated incident of harassment by a co-worker will rarely (if ever) give rise to a reasonable fear that [racial] harassment has become a permanent feature of the employment relationship. *Brooks*, 229 F.3d at 924. Title VII is not a "general civility code," and therefore, "simple teasing, . . . offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788, 118 S.Ct. 2275, 2283 (1998). "When compared to other hostile work environment cases, the events in this case are not severe or pervasive enough to violate Title VII." *Vasquez*, 349 F.3d at 643. Based on the totality of the circumstances, Plaintiff has not met her burden to establish that the workplace to be hostile. Accordingly, Defendant is entitled to judgment as a matter of law.

### D.   Disparate Treatment

#### 1.  Legal standard

"Under Title VII, an individual suffers disparate treatment 'when he or she is singled out and treated less favorably than others similarly situated on account of race.'" *McGinest v. GTE Service Corp.*, 360 F.3d 1103, 1122 (9th Cir. 2004) (quoting *Jauregui*

*v. City of Glendale*, 852 F.2d 1128, 1134 (9th Cir. 1988)). "To establish a *prima facie* case under Title VII, a plaintiff must offer proof: (1) that the plaintiff belongs to a class of persons protected by Title VII; (2) that the plaintiff performed his or her job satisfactorily; (3) that the plaintiff suffered an adverse employment action; and (4) that the plaintiff's employer treated the plaintiff differently than a similarly situated employee who does not belong to the same protected class as the plaintiff." *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1028 (9th Cir. 2000) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973)).

Once a plaintiff establishes a *prima facie* case, "[t]he burden then must shift to the employer to articulate some legitimate nondiscriminatory reason for the employee's rejection." *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1825. If the employer produces evidence of a legitimate nondiscriminatory reason for the employment action, the plaintiff must offer proof that the reason is actually a pretext for racial discrimination. *McGinest*, 360 F.3d at 1123; *see also Cornwell*, 439 F.3d at 1028. "A plaintiff can show pretext directly, by showing that discrimination more likely motivated the employer, or indirectly, by showing that the employer's explanation is unworthy of credence." *Vasquez v. County of Los Angeles*, 349 F.3d 634, 641 (9th Cir. 2003).

### 2. *Prima facie* case

Defendant argues that Plaintiff cannot establish a *prima facie* case of discrimination, and therefore her claims must fail. *See* Def.'s Mot. for Summ. J. (Doc. 46) at 7–10.

#### a. Protected class

It is undisputed that Plaintiff is African-American, and her national origin represents a protected class. As such, Plaintiff establishes the first prong of his *prima facie* case.

#### b. Job performance

It is undisputed that Plaintiff was performing satisfactorily. She was promoted after her initial hire, as well as assigned additional responsibilities. Def.'s SOF (Doc.

1  47), Hepburn Depo. 5/22/2018 (Exh. "1") at 11:1–10, 11:24–12:15, 20:14–19, 23:1–10,
2  24:3–8, 25:6–26:7.

### c. Adverse employment action

Plaintiff did not suffer any adverse employment action. To the extent that Plaintiff alleges that her failure to receive corporate update e-mails was an adverse employment action, she has failed to produce any evidence to support that this was a personnel action. Rather, her testimony reflects that a co-worker was responsible for providing the e-mails. Def.'s SOF (Doc. 47), Hepburn Depo. 5/22/2018 (Exh. "1") at 59:17–60:14. *See Strother v. So. Cal. Permanente Med. Group*, 79 F.3d 859, 869 (9th Cir. 1996) ("mere ostracism in the workplace is not enough to show an adverse employment decision").

### d. Treatment different from similarly situated employees

Plaintiff does not make any allegation that she received treatment different from similarly situated employees, nor does the evidence support such a claim.

### e. Conclusion

Plaintiff cannot establish a *prima facie* case of disparate treatment. As such, Defendant is entitled to summary judgment regarding Plaintiff's disparate treatment claims.

### *E.  Retaliation*

Title VII makes it unlawful for employers "to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). "To make out a prima facie case of retaliation, an employee must show that (1) he engaged in a protected activity; (2) his employer subjected him to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse action." *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000).

A retaliation claim requires that Plaintiff complain about an unlawful employment

practice. "Title VII defines the term 'unlawful employment practice' as discrimination on the basis of any of seven prohibited criteria: race, color, religion, sex, national origin, opposition to employment discrimination, and submitting or supporting a complaint about employment discrimination." *University of Texas Southwestern Medical Ctr. v. Nassar*, 133 S.Ct. 2517, 2532, 186 L.Ed.2d 503 (2013).

Here, Plaintiff engaged in a protected activity—alerting HR to racially derogatory language; however, she has not alleged sufficient facts to support that she suffered an adverse employment action. As such, she cannot meet her burden to establish a retaliation claim, and Defendant is entitled to summary judgment.

## IV. CONCLUSION

Based upon the foregoing, the Court finds that Plaintiff has failed to meet her burden in opposing Defendant's motion for summary judgment. Accordingly, IT IS HEREBY ORDERED that:

(1) Plaintiff's Motion for Entry of Default Judgment (Doc. 45) is DENIED;

(2) Defendant's Motion for Summary Judgment (Doc. 46) is GRANTED; and

(3) This matter is DISMISSED WITH PREJUDICE. **The Clerk of the Court shall enter judgment and close the case.**

Dated this 30th day of September, 2019.

Honorable Bruce G. Macdonald
United States Magistrate Judge